IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY DEE SANDERFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-2165-RDR |
| ) | |
| STEPHEN MALLEY, M.D., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter comes before the court upon Plaintiff Kimberly Dee Sanderford's Motion for Approval of Settlement (ECF No. 30), which the district judge has referred to the undersigned for a Report and Recommendation. The motion seeks approval of the parties' private settlement agreement and approval of attorney fees. Both Ms. Sanderford and Defendant Stephen Malley, M.D. have submitted *in camera* the settlement agreement as well as supplemental briefs regarding approval of attorney fees. On March 13, 2015, the court held a hearing on the motion. Ms. Sanderford appeared personally with her counsel, Thomas E. Hankins. Dr. Malley appeared through counsel, Diane L. Waters. Based on the motion, the materials submitted *in camera*, and the evidence presented during the hearing, the magistrate judge respectfully recommends the district judge deny the motion as to Ms. Sanderford's request that the court approve the settlement agreement and grant the motion as to the request that the court approve the parties' respective attorney fees.

**I.      The Settlement Agreement**

Ms. Sanderford seeks court approval of her settlement agreement with Dr. Malley. Ordinarily, a federal court need not approve a settlement reached by opposing parties.[1] In the

---

[1] *See TBG, Inc. v. Bendis*, 811 F. Supp. 569, 600 (D. Kan. 1992).

supplemental briefs submitted to the magistrate judge *in camera*, specify that the parties seek court approval pursuant to K.S.A. 40-3410. That statute requires court approval of medical malpractice settlements under certain circumstances:

> When the insurer of a health care provider or inactive health care provider covered by the fund has agreed to settle its liability on a claim against its insured or when the self-insurer has agreed to settle liability on a claim and the claimant's demand is in an amount in excess of such settlement, or where a claim is against an inactive health care provider covered by the fund who does not have liability insurance in effect which is applicable to the claim, or where it would otherwise be in the best interest of the fund, the claimant and the board of governors may negotiate on an amount to be paid from the fund. The board of governors may employ independent counsel to represent the interest of the fund in any such negotiations. In the event the claimant and the board of governors agree upon an amount the following procedure shall be followed: . . . (c) At such hearing, the court shall approve the proposed settlement if the court finds it to be valid, just and equitable.

In *Whittington v. Newman Regional Health Center*, District Judge Daniel D. Crabtree found that the statute does not require court approval of settlements that do not impose liability on the Kansas Heath Care Stabilization Fund (the Fund), which provides excess medical malpractice coverage.[2] The parties in *Whittington* argued the first sentence of K.S.A. 40-3410 extends the statute to any medical malpractice settlement involving a health care provider covered by the Fund. Judge Crabtree rejected this interpretation: "The provision they cite provides that the Court must approve a medical malpractice settlement when, among other circumstances, 'the insurer of a health care provider . . . covered by the fund has agreed to settle its liability on a claim against its insured . . . and the claimant's demand is in an amount in excess of such settlement.'"[3] Judge Crabtree found that under the statute, the requirement for court

---

[2] No. 14-CV-4008-DDC-KGG, 2015 WL 224814, at *2 (D. Kan. Jan. 15, 2015).

[3] *Id.* (quoting K.S.A. 40-3410).

approval arises when the "claimant and the [Fund's] board of governors agree an amount to be paid [from the Fund].;"[4] Therefore, "to trigger the statute's court approval provision, the settlement, at a minimum, must involve a decision by the Fund's board of governors to pay money from the Fund itself."[5]

Here, the parties' settlement does not impose liability on the Fund. In the court's order setting this matter for a hearing, it directed the parties to review *Whittington* and then clarify in their supplemental briefs whether they still sought court approval of the settlement and if so, the legal basis for seeking court approval.[6] The parties state that they do still seek court approval of the settlement, and in support, they advance the same interpretation of the statute considered and rejected by Judge Crabtree in *Whittington*. Dr. Malley's supplemental brief states that he is a health care provider covered by the Fund. He and his insurer agreed to settle his liability. The board of governors met about this case, sent representatives to mediation, agreed with the settlement plan, and reached an agreement that the Fund would pay nothing. The briefs do not mention *Whittington* or set forth any legal argument as to why the judges presiding over this matter should reach a different conclusion from Judge Crabtree. For the same reasons set forth in *Whittington*, the undersigned finds that because this settlement does not involve a decision by the board of governors to pay money from the Fund itself, the statute does not require court approval of the settlement. The magistrate judge recommends the district judge deny the motion as to the request to approve the settlement.

**II.      Attorney Fees**

---

[4] *Id.* (citing K.S.A. 40-3410).

[5] *Id.*

[6] Order at 2, ECF No. 33.

K.S.A. 7-121b(a) requires the court to approve attorney fees in medical malpractice cases. Under the statute, the court must consider the following factors when determining whether the attorney fees are reasonable:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation and ability of the attorney or attorneys performing the services.
>
> (8) Whether the fee is fixed or contingent.[7]

At least one judge in this district has found that the lodestar analysis (the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) is the most useful starting place for determining reasonable attorney fees under K.S.A. 7-212b.[8] In this case, neither party has provided the court with contemporaneous time records. During the hearing, defense counsel explained that her billing statements contain a significant amount of information that would be attorney-client privileged. Plaintiff's counsel stated that he did not keep

---

[7] K.S.A. 7-121b(a)(1)-(8).

[8] *See Shrout v. Holmes*, No. 00-2069-KHV, 2001 WL 980280, at *1 (D. Kan. Aug. 10, 2001)

4

contemporaneous time records. Given the amount of the settlement, the relatively low percentage of the contingency fee charged by plaintiff's counsel, and the fact that defense counsel states that she has submitted detailed billing records to the insurance company responsible for paying for the defense of this case, the undersigned declines to use a strict lodestar analysis to determine whether the fees are reasonable in this case. Rather, the court addresses each of the factors set out in K.S.A. 7-121b.

### A. Plaintiff's Attorney Fees

The fee arrangement between Ms. Sanderford and her counsel was that counsel would be paid 25 percent of the net settlement award to Ms. Sanderford. That is, the gross settlement award less the litigation expenses advanced by Ms. Sanderford and less the litigation expenses advanced by counsel. This calculation results in attorney fees in the amount of $23,286.71. During the hearing, Ms. Sanderford testified that she felt the settlement was fair and reasonable and agreed with the distribution of attorney fees. The court now turns to the statutory factors.

As to the first factor, plaintiff's counsel states that the time and labor required in this matter exceeded 75 hours and was spent meeting with Ms. Sanderford, gathering the facts of the case, reading medical literature regarding gastric bypass surgery, locating and hiring expert witnesses, preparing pleadings, participating in mediation, and defending the depositions of Ms. Sanderford, her husband, and her daughter. Generally, medical malpractice cases require counsel to become familiar with all aspects of the medical procedure involved as well as the alleged complications that occurred. Although plaintiff's counsel did not keep contemporaneous time records, the court notes that both sides appear to have spent a similar number of hours on this

case. In the past, this court has looked to an opposing party's hours billed when assessing the reasonableness of the hours billed by the other party.[9]

Plaintiff's counsel states that the second factor is not a relevant factor in this particular case—the likelihood, if apparent to the client, that the acceptance of the particular employment would preclude other employment.

As to the third factor, plaintiff's counsel's fee appears reasonable. As is common in medical malpractice cases, Ms. Sanderford signed a contingency fee contract with her attorney. The proposed fee is 25 percent of the gross settlement proceeds less the litigation expenses advanced by Ms. Sanderford and less the litigation expenses advanced by counsel. The fee agreement between Ms. Sanderford and her attorney provides some basis for determining whether counsel's fees are reasonable.[10] While it is somewhat atypical that Ms. Sanderford advanced some of her own expenses, the 25-percent contingency fee is also lower than what is customarily charged in medical malpractice cases.[11]

As to the fourth factor, the amount involved and the results obtained, plaintiff's counsel notes that he obtained a favorable settlement for his client. Difficulties in this case included that Ms. Sanderford was an educated, intelligent person who elected to undergo this medical procedure knowing of the risks involved. During the hearing, plaintiff's counsel stated that he

---

[9] *See Shrout*, 2001 WL 980280, at *3 (D. Kan. Aug. 10, 2001) (considering hours billed by defense counsel when evaluating the reasonableness of plaintiff's counsel's fee).

[10] *See Bergeson v. Dilworth*, 875 F. Supp. 733, 739 (D. Kan. 1995).

[11] Plaintiff's counsel states that lawyers from the Kansas City area customarily charge a 40-percent contingency fee. Although there is a lack of case law from this district addressing the reasonableness of a contingency fee in a medical malpractice case, the undersigned generally agrees with plaintiff's counsel that a 25-percent contingency fee is below the typical rate. *See generally* Lee Harris & Jennifer Longo, *Flexible Tort Reform*, 29 HAMLINE J. PUB. L. & POL'Y 61, 79–80 (2007) ("In a contingency fee arrangement, which represents a significant share of medical malpractice litigation . . . . a personal injury lawyer typically takes thirty-three to forty percent of any award or settlement.").

advised his client that if this case proceeded to trial, she could obtain a more favorable jury verdict, a less favorable jury verdict, or the jury could return a verdict in favor of Dr. Malley. Ms. Sanderford testified that it was her desire to settle this matter.

Plaintiff's counsel states that the fifth factor—time limitations imposed by the client or circumstances was not an important factor in this case.

As to the sixth factor, the nature and length of the professional relationship with the client, plaintiff's counsel states that Ms. Sanderford hired him for this case only and has no prior or continuing relationship with him or with the firm.

As to the seventh factor—counsel's experience, reputation, and the ability—plaintiff's counsel states that he has been a licensed attorney since 1977, and after serving in a federal clerkship, he has been in private practice since 1979. He states that he has extensive experience litigating personal injury and medical malpractice cases. During the hearing, he stated that he estimated he had brought suit in 40 to 50 medical malpractice cases in addition to reviewing hundreds of other potential medical malpractice cases in which he declined to bring suit. Additionally, plaintiff's counsel stated he had experience prosecuting other personal injury suits and had proceeded to trial in many of these cases.

As previously stated, plaintiff's counsel's fee is contingent on the success of the litigation—the eighth factor to consider. As outlined above, the 25-percent contingency fee arrangement is less than what is typical for medical malpractice cases in the Kansas City Area. Given the added difficulty of medical malpractice cases, the amount of time spent on this case, and the outcome of this litigation, the court finds Mr. Hankins' fee is reasonable.

    **B.**    **Defendant's Attorney Fees**

Defense counsel states her average hourly rate for this case was $165.79. As of the date of her supplemental brief, the total fees billed were $14,307.50. During the hearing, defense counsel stated that she submits detailed billing statements to the insurer responsible for paying her fees. After reviewing the statements, the insurer tendered payment for the fees and expenses billed to date. The court now turns to the statutory factors.

As to the first factor, defense counsel states that defending medical malpractice claims is a specialty that requires a good understanding of the medical issues in the case. This particular case involves a bariatric surgery with laparoscopic banding, which also raised issues associated with patient consent and contraindications for elective procedures. Defense counsel also states that she had to be familiar with the anatomical issues associated with this procedure as well as knowledge regarding how to obtain, organize, and review medical records.

There is no information before the court regarding the second factor—the likelihood, if apparent to the client, that the acceptance of this particular employment would preclude other employment by the attorney. However, this would not appear to be the case because defense counsel handles other medical malpractice cases similar to this one.

As to the third factor, defense counsel's fee falls within the scope of that customarily charged in the locality for similar legal services. When determining the reasonable hourly rate, the district court should consider evidence showing "what the market commands for analogous litigation."[12] Generally, the party seeking approval of fees must show the rate charged is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[13] Here, defense counsel estimates that attorneys paid privately

---

[12] *Hayes v. IC Sys., Inc.*, No. 14-2513-JTM, 2015 WL 506192, at *7 (D. Kan. Feb. 6, 2015) (quoting *United Phosphorous, Ltd. V. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000)).

[13] *Id.* (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).

for similar work would bill at hourly rates as high as $400 per hour. Defense counsel is paid by a liability carrier, which she states she has contracted with to provide service at a lower rate. She states that medical negligence insurance defense rates range from $165 to $210 per hour. Counsel also performs work for the Kansas Health Care Stabilization Fund, for which she bills $190 per hour. In this case, defense counsel charged an average hourly rate of $165.79. The information presented establishes the reasonableness of defense counsel's fee.  Her supplemental brief also details the time she and her staff spent defending this action, a total of 86.3 billed hours, which included the taking of three depositions and preparing for and attending mediation. The activities listed and amount of time billed appear reasonable.

As to the fourth factor, the amount sought in this action were damages in the sum of one-million dollars and costs.[14] The result obtained was a settlement for a fraction of the amount Ms. Sanderford sought in her complaint. Dr. Malley's supplemental brief outlines additional sensitive, personal considerations regarding why Dr. Malley wanted to settle this case. This information supports the reasonableness of defense counsel's fees in this matter.

There is no information before the court regarding the fifth factor (the time limitations imposed by the client or by the circumstances) or the sixth factor (the nature and length of the professional relationship with the client). This factors would not support or negate the reasonableness of the fees charged in this case.

The seventh factor is counsel's experience, reputation, and ability. During the hearing, defense counsel stated that she has been practicing law since 1997. She estimated that in the past five years, about 90 percent of her practice involved medical malpractice defense. She stated that she had defended hundreds if not a thousand tort cases during her career, including defending

---

[14] Compl. at 4, ECF No. 1.

approximately 20 to 30 bariatric surgery cases. Defense counsel's experience supports the reasonableness of the fees.

As to the eighth factor, the fee in this case is fixed. The above factors weigh in favor of finding that counsel's fee is reasonable. As outlined above, her hourly rate is commensurate if not lower than that customarily charged in the Kansas City area for similar legal services, and the hours billed also appear reasonable.

### III.     Conclusion

For the reasons outlined above, the magistrate judge respectfully recommends that the district judge grant in part and deny in part Ms. Sanderford's motion for settlement approval. The undersigned recommends that the district judge deny the motion as to the request that the court approve the parties' settlement agreement. The undersigned recommends that the district judge grant the motion as to the parties' request to approve their respective attorney fees.

Pursuant to 28 U.S.C.§636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.4, the parties shall have fourteen (14) days after service of a copy of this Report and Recommendations to file any written objections. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

Dated this 16th day of March, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
